IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (603) 275-0967, T-MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 31026095599955400. | Case No. 1:19-mj-183-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Matthew C. Boc being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (603) 275-0967, with International Mobile Subscriber Identity 31026095599955400, with no listed subscriber name or address (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-

1

3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the United States Drug Enforcement Administration "DEA" and have been since February 17, 2012.  I have been assigned to the Southern New Hampshire Drug Enforcement Administration's High Intensity Drug Trafficking Area Task Force of the Boston Division of the United States as a Special Agent since February of 2018.  Prior to joining the DEA I was a full time Police Officer in the State of New Hampshire for approximately nine years. My current duties and responsibilities include the investigation of possible violations of federal law, including violations of 21 U.S.C. § 841(a)(1).

4. Since joining the DEA, I have participated in twelve wiretap investigations and several other investigations where I analyzed telephone toll records and subscriber information. I have received significant training in the field of narcotics enforcement and investigations. Through my training, education, and experience, I have become familiar with the manner in which drug trafficking organizations ("DTOs") conduct their illegal activities, including purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the efforts of persons involved in such activity to avoid detection by law enforcement. In the course of participating in investigations of drug distribution organizations, I have conducted or participated in surveillance, the purchase of illegal drugs, the execution of search, seizure, and arrest warrants, debriefings of subjects, witnesses, and confidential informants, and reviews of consensually recorded conversations, meetings, and Title III intercepts.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that Doriel GUERRERO has violated 21 U.S.C. §§ 841(a)(1) & 846 – Possession with Intent to Distribute and Conspiracy to Distribute Controlled Substances. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these crimes and will lead to the identification and location of those who committed them.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is the United States District Court, District of New Hampshire: a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

8. Since June of 2019, the DEA has been involved in a criminal investigation of a Drug Trafficking Organization "DTO" engaged in the distribution of fentanyl in the Lawrence, Massachusetts in violation of 21 U.S.C. §§ 841(a)(1) & 846 – Possession with Intent to Distribute and Conspiracy to Distribute Controlled Substances

9. On June 7, 2019, GUERRERO, using the name "Freddy BANKS", unknowingly contacted law enforcement on an undercover "UC" Facebook Account. GURERRERO explained to the undercover agent, in sum and substance, that he was looking for potential "business partners" to help distribute Fentanyl.

10. Law enforcement and open source databases showed that GUERRERO was the target of several narcotics investigations in the States of Massachusetts and New Hampshire. Law enforcement in Northern New Hampshire reported that Confidential Source "CS"

3

information led them to GUERRERO.  GUERRERO also contacted an undercover Facebook account of a narcotics detective in Northern Massachusetts.

11.	On August 15, 2019, law enforcement conducted an undercover purchase of narcotics from GUERRERO.  At approximately 04:00 P.M., utilizing an undercover agent, law enforcement placed a call to telephone number (603) 417-9122, which was given to the undercover agent via Facebook by "Freddy BANKS" to arrange the transaction.  An unidentified male, later determined to be GUERRERO, answered the phone and the UC ordered a "sample" or a small amount of all of Fentanyl.  GUERRERO agreed to sell 10 grams of Fentanyl for $220.  GUERRERO told UC to meet him at the McDonald's at the Loop in Methuen.  Upon arrival at the McDonald's, 110 Pleasant Valley Street, Methuen, MA, the UC again spoke with GUERRERO to advise GUERRERO that he had arrived.

12.	At approximately 05:54 P.M., under the supervision of law enforcement, GUERERRO entered the parking lot of McDonald's operating a gray 2008 Lexus IS250, bearing Massachusetts registration 9VA886, and park in the parking lot.  Law enforcement observed GUERRERO enter the restaurant and exit the other side of the building approximately three minutes later.  GUERRERO approached the UC's vehicle and made the exchange of 10 grams of Fentanyl for $220.  GUERRERO then returned to his vehicle and left the area.

13.	On August 16, 2019, GUERRERO reached out the UC and provided him with a new telephone number to conduct future transactions.  GUERRERO and the UC began communicating over the new number via text and recorded calls.

14.	The Methuen Police Department assisted in identifying GUERRERO utilizing law enforcement and motor vehicle licensing databases.  The UC then confirmed that GUERRERO was the target who met with the UC and sold the UC the Fentanyl.

15. From my training and experience, it is common conduct of narcotics traffickers to frequently "drop" telephones, switch telephone numbers, or have several different phones to be utilized in narcotics trafficking to avoid detection by law enforcement.

16. There is therefore probable cause to believe that the Target Mobile Phone is being used to coordinate and conduct narcotics transactions. Real-time location data from the phones will assist law enforcement in locating and identifying targets and the locations utilized by the GUERRERO DTO to conduct illegal drug business.

17. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available.

19.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phone.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

20.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

23.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

                                                Respectfully Submitted,

                                                /s/ Matthew C. Boc
                                                Matthew C. Boc
                                                Special Agent
                                                U.S. Drug Enforcement Administration

Subscribed and sworn to before me on August 27, 2019.

_____

Hon. Andrea K. Johnstone
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone assigned call number (603) 275-0967, with International Mobile Subscriber Identity 310260955995540, with no listed subscriber information (the "Target Cell Phone"), whose wireless service provider is T-Mobile, a company headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).